IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

_____

DIANE CUTAIA, and MARK SNYDER,

        Plaintiffs,

and

LINDA SNYDER McFALL,

        Plaintiff-in Intervention,

v.                            No. CIV 06-326 BB/WPL

WELLS FARGO BANK NEW MEXICO,

        Defendant.

MEMORANDUM OPINION
AND
ORDER DENYING SUMMARY JUDGMENT

THIS MATTER comes before the Court on Plaintiffs' Motion for Partial Summary Judgment (Doc. 7) as to the issues of liability and elements of damages,, and on Defendant's Motion for Summary Judgment (Doc. 15) based upon application of the statute of limitations set forth in NMSA 1978 § 45-7-307.  NMSA 1978 § 45-7-307 (repealed 2003).  The Court having reviewed the motions and considered the arguments and submissions of counsel, relevant authorities, and being otherwise fully advised, finds that Plaintiffs' motion will be Granted in Part.

## FACTS

Both sides have moved for summary judgment and assert that there is no dispute of material fact in this case.  Each side has filed briefs setting forth the facts and the Court finds no material difference, so the facts will be treated as stipulated for purposes of these motions.

On August 28, 1981, Leonard and Catherine Parker established the Leonard A.B. Parker and Catherine M. Parker Revocable Trust.  On April 8, 1986, Catherine Parker died. Subsequently, the trust estate was divided into Trust A and Trust B.  This case concerns only Trust B (the "Trust").

On September 19, 2001, Leonard Parker died.  Prior to his death, Mr. Parker served as Trustee of the Trust.  After his death, Defendant Wells Fargo Bank New Mexico became the sole trustee of the Trust.  Defendant's duties as trustee following the death of Leonard Parker consisted of receiving and managing the Trust and distributing the assets in accordance with the Trust instrument.  Section 6.2 of the Trust provided that thirty percent of the residuary estate be divided among four charitable organizations.  Plaintiff Diane Cutaia received thirty-five percent of the residuary estate, and Plaintiffs Mark Snyder and Linda Snyder each received seventeen and one-half percent of the residuary estate.  Article IX of the Trust granted broad powers to the trustees.  However, and most significantly, after the death of the grantors, the Defendant trustee was required to obtain the written consent of Jerry L. Lewallen prior to changing the nature of the Trust assets.

Shortly after Leonard Parker's death, Defendant's counsel sent a letter to the beneficiaries of the Trust, including Plaintiffs, enclosing a copy of the Trust instrument.  The letter informed Plaintiffs that it was the trustee's intention to inventory the Trust assets and

to get a district court order approving final settlement of the Trust.  Throughout the periods of February 1, 2002 - June 30, 2002, July 1, 2002 - September 30, 2002, and September 30, 2002 - December 31, 2002, Defendant prepared and sent to Plaintiffs detailed reports of all transactions relating to the Trust account.  These reports were in the form of the "Chronological Transaction Journal."

On March 8, 2002, and March 12, 2002, Defendant liquidated the Trust assets.  Defendant did so without first obtaining the consent of Mr. Lewallen.  The parties agree that for purposes of the summary judgment motions following a diligent search, Defendant believed Mr. Lewallen was deceased.  Nor did Defendant inform Plaintiffs that it failed to obtain Mr. Lewallen's consent until after the period for contesting the order approving the settlement had lapsed.

On April 23, 2002, Defendant filed a Petition for Order of Complete Settlement of Trust in the New Mexico District Court for the Second Judicial District.  Attached to that Petition was an Accounting and Distribution Schedule that itemized the assets received, listed the estimated expenses to be paid in the administration of the Trust, and detailed the anticipated distributions to various beneficiaries, including Plaintiffs.  A copy of the Petition with the attached Accounting and Distribution Schedule was sent to the beneficiaries, including Plaintiffs, by Defendant's counsel on April 23, 2002, along with a letter that offered to provide additional copies of the Trust document and encouraged the beneficiaries to consult with their own counsel about this matter.  No objection was made to the Petition.  On May 13, 2002, the court entered an order approving complete settlement of the Trust.  Each of the beneficiaries was sent a copy of this order.

On May 23, 2002, Michael D. DeVenzeio, Vice President and Trust Officer of Defendant, sent a letter to each of the Plaintiffs summarizing the pleadings and the court's order of approval.  In that letter, he mentioned that there was no opposition either before or at the hearing and further stated that the distribution would occur within three months, provided no action to overturn the order was taken.  On July 12, 2002, Mr. DeVenzeio sent letters to each of the Plaintiffs stating that the order approving complete settlement was not objected to or appealed, so Defendant was able to finalize the Trust and make a complete distribution.  Checks from this cash distribution were enclosed.

On August 15, 2002, Mr. DeVenzeio sent letters to each of the Plaintiffs explaining that the Trust had received an income tax refund as well as additional interest.  In those letters, Defendant asked each Plaintiff to sign and return an enclosed W-4 form.  Additionally, Plaintiffs received checks for this final distribution.  Significantly, approximately one-half of the distributions consisted of short or long-term capital gain resulting from the sale of the Trust assets.

On October 4, 2002, Plaintiffs were first informed of their liability for capital gains tax when they received correspondence signed by Mr. DeVenzeio on behalf of Defendant, enclosing their K-1 forms for their federal income tax returns.

On March 2, 2004, counsel for Plaintiff Diane Cutaia sent a letter to Defendant's counsel requesting a letter confirming that Ms. Cutaia did not have any capital gains from the Trust for the year 2001.  On March 9, 2004, Defendant's counsel responded and attached another copy of the K-1 form outlining a capital gains liability for Plaintiff Cutaia.

On April 1, 2005, Plaintiffs' counsel sent a letter to Mr. DeVenzeio seeking information regarding Defendant's sale of stock assets held in the Trust.  This letter inquired as to whether Defendant had obtained Mr. Lewallen's consent before it liquidated the Trust assets.  On April 8, 2005, Mr. DeVenzeio responded with a letter explaining Defendant sold the stock without Mr. Lewallen's consent on the assumption he was deceased.  In fact, however, Mr. Lewallen was very much alive and has filed an affidavit indicating he would not have approved of the sale of Trust assets but "would have consented to a distribution of the shares in the proportions set forth in the Trust instrument."  Lewallen affidavit ¶ 6.

## SUMMARY JUDGMENT STANDARD

Both Plaintiffs and Defendant moved for summary judgment.  The Tenth Circuit has explained:

> It is ... settled doctrine that the fact that both parties have moved for summary judgment does not permit the entry of a summary judgment if disputes remain as to material facts.  However, cross motions for summary judgments do authorize the court to assume that there is no evidence which needs to be considered other than that which has been filed by the parties.

*Harrison Western Corp. v. Gulf Oil Co.*, 662 F.2d 690, 692 (10th Cir. 1981) (citations omitted);

*SEC v. American Commodity Exch., Inc.*, 546 F.2d 1361, 1366 (10th Cir. 1976).

## ANALYSIS

Defendant petitioned the New Mexico district court for an order approving the complete settlement of the Trust and sent the Petition, with an Accounting and Distribution Schedule, to Plaintiffs in April 2003.  Prior to New Mexico's adoption of the Uniform Trust Code, effective July 2003, the Uniform Probate Code ("UPC") governed trust administration.  The appropriate section, NMSA 1978 § 45-7-307 (1975), provides:

**Unless previously barred by adjudication, consent or limitation, any claim against a trustee for breach of trust is barred as to any beneficiary who has received a final account or other statement fully disclosing the matter and showing termination of the trust relationship between the trustee and the beneficiary unless a proceeding to assert the claim is commenced within six months after receipt of the final account or statement. In any event, and notwithstanding lack of full disclosure, a trustee who has issued a final account or statement received by the beneficiary and has informed the beneficiary of the location and availability of records for his examination is protected after three years. If notice of the final account or statement has been given as provided in Section 1-401 [45-1-401 NMSA 1978], or as provided in Section 1-403 [45-1-403 NMSA 1978], and if the beneficiary is a minor or disabled person, then such beneficiary is conclusively presumed to have received the final account or statement.**

In order for the trustee to claim the benefit of the six-month statute of limitations, it has the burden of proving the statements given the beneficiary "fully disclose the matter." *Nayee v. Nayee*, 705 So.2d 961 (Fla. App. 1998) (decided under same provision of UPC); *Liberty Title & Trust Co. v. Plews*, 77 A.2d 219 (N.J. 1950) (summarizing trustee's duty of full disclosure). Defendant makes no argument it fully disclosed circumstances surrounding the lack of Mr. Lewallen's approval.[1] Based on evidence in the record and Defendant's failure to contest this issue, Plaintiffs are entitled to summary judgment.

The UPC alternatively, "and notwithstanding lack of full disclosure, provides a trustee who has issued a final account or statement received by the beneficiary and has informed the beneficiary of the location and availability of records for his examination is protected after three years." It is this language on which Defendant now relies.

---

[1] Defendant does not concede that it failed to fully disclose the sale of the property without Mr. Lewallen's prior written consent. Rather, Defendant maintains "it is not necessary to determine whether the six-month limitation period ... applies in this case" as Plaintiffs' claims are barred as a matter of law if the conditions for application of the three-year limitation period were met." (Def.'s Mot. S.J. p. 8). Since the Court finds it is necessary to decide the issue, Defendant's silence alone with the undisputed facts dictate the issue be decided in Plaintiffs' favor.

The structure of § 45-1-307 suggests that the draftsmen sought to balance equity with finality.  If the trustee fully disclosed the matter, the beneficiary "must initiate a proceeding within six months for anything that fully appeared on a final account."  *Marshall v. First Nat'l Bank Alaska*, 97 P.3d 830, 837 (Alaska 2004).  Alternatively, if the matter was not "fully disclosed," the beneficiary should be limited to three years from being told the location and availability from which the alleged violation could be ferreted out.  *Cf. In re Johnson*, 518 F.2d 246 (10th Cir. 1975) (beneficiary must have method of discovery before laches can apply).

Defendant notes each of the Plaintiffs received the Transaction Journals as well as the Petition for Order of Complete Settlement of Trust with the attached Accounting and Distribution Schedule.  Plaintiffs dispute whether the Defendant satisfied the statutory requirement that Defendant informed the beneficiaries "of the location and availability of records" by sending letters from  Michael DeVenzeio, Defendant's vice president and trust officer, indicating Defendant "had records relating to the Trust available."  Plaintiffs point out that not only were records not identified, the return address for Mr. DeVenzeio is a post office box.  The Court agrees that merely indicating the Defendant had records without specifying what records, where or when they could be reviewed,  is insufficient.  Pamela B. Minzner, *Article VII of the New Mexico Probate Code: In Pursuit of Uniform Trust Administration*, 6 N.M. L. Rev. 213, 214 (1976) (new Probate Code provides the trustee with powers beyond the common law); *Lucero v. Richardson & Richardson, Inc.*, 39 P.3d 739 (N.M. App. 2001) (statutes in derogation of the common law should be strictly construed).  The statutory language indicates it was the intent of the legislature was to estop beneficiaries from challenging a final accounting if the trustee has provided them the opportunity to review the

records which they belatedly seek to challenge.  Equity is certainly not offended if the beneficiaries are provided three years to inspect fully disclosed records and determine if they have been wronged.  *Horbach v. Kaczmarek*, 288 F.3d 969, 973 (7th Cir. 2002) (equity is reluctant to aid a party who has knowingly slept on his rights).  The problem here is that there is a question of fact as to whether the letters from Mr. DeVenzeio informed the beneficiaries of the location and availability of any records from which a reasonable person would have been able to glean Mr. Lewallen's lack of consent and whether it was prudent for the trustee to then follow the selected course.  *Cf. In re Bonnanzio*, 91 F.3d 296 (2d Cir. 1996) (whether client had enough information to know of accounting fraud a fact question.)

### O R D E R

For the above stated reasons, Plaintiffs' Motion is GRANTED as to the six-month limitation period, and Plaintiffs' and Defendant's Motions for Summary Judgment are otherwise DENIED.

SO ORDERED this 1st day of December, 2006.

BRUCE D. BLACK
United States District Judge

For Plaintiffs:
Donald J. Dombrowski, Houston, TX
Mel B. O'Reilly, Albuquerque, NM

For Defendant:
W. Spencer Reid, Anastasia S. Stevens, KELEHER & MCLEOD, Albuquerque, NM

8