IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

_____

**DIANE CUTAIA and
MARK SNYDER**,

Plaintiffs,[1]

v.                                                                    No. CIV 06-00326 BB/WLP

**WELLS FARGO BANK OF NEW
MEXICO**,

Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment
Based on the Absence of Damages to Plaintiffs, filed on August 10, 2007 **[Doc. 53]**. The Court,
having considered the motion, response, reply, and relevant law, and being otherwise fully
informed, finds that the motion is not well taken and will be **DENIED**.

**I. Background**

Defendant Wells Fargo, sole trustee for the Leonard Parker revocable trust ("Trust")
brought this motion contending that Plaintiffs, the beneficiaries of the Trust, have suffered no
recoverable damages from Defendant's alleged breach of trust and thus summary judgment in its
favor is appropriate.  The facts underlying Plaintiffs' action appear relatively settled between the
parties. Under the terms of the Trust, upon the death of Leonard Parker, Defendant was

_____

[1]Since the Motion and Response were filed, Linda Snyder McFall, formerly a Plaintiff-in-
Intervention, has withdrawn her claims in this suit. This fact was noted in the Pretrial Order,
[DOC 59 at 4 ¶4], thus the Court will no longer include her as a Plaintiff in this suit.

1

responsible for distributing the Trust estate to a number of beneficiaries. The Trust required that Defendant obtain the written consent of a third party, Jerry Lewallen, prior to changing the nature of trust assets. Defendant, erroneously believing Mr. Lewallen to be dead, sold the trust assets without obtaining his consent, and subsequently distributed the resulting cash, rather than the shares of stock in kind, to Plaintiffs. Wells Fargo sent the last of the trust asset distributions to Plaintiffs on August 15, 2002. The stocks and mutual fund owned by the Trust, including Bank of America, PNM, and American Express, have risen in value considerably since August 2002. Plaintiffs contend that the breach of trust by Defendant entitles them to recover this appreciation in value. Defendant maintains that Plaintiffs are not entitled to appreciation damages and failed to mitigate their damages, leaving Plaintiffs with no recoverable damages at this time. The narrow issue before the Court is not which measure of damages is appropriate, but rather whether Plaintiffs failed to suffer any recoverable damages, making summary judgment appropriate.

## II.  Legal Analysis

### A. Standard on Summary Judgment

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. When applying this standard, a court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir. 1999). A mere scintilla of evidence supporting the nonmoving party's theory does not create a genuine issue of material fact. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1175 (10th Cir. 1999). Instead, the nonmoving party must present facts such that under the applicable law, a reasonable jury could find in its favor. *Id.* The Court will analyze the motion for summary judgment under this standard.

### B. Damages for Breach of Trust

This case comes before the Court on the basis of diversity jurisdiction, thus this Court must "ascertain and apply the state law," *Wade v. Emcasco Ins. Co.,* 483 F.3d 657, 665 (10th Cir.

2007), here the substantive law of the state of New Mexico. *See also Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938). The Court must follow the most recent decisions of the state's highest court, but where no controlling decision exists, the court must try to predict what the state's highest court would do. *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003). In doing so this Court may seek guidance from decisions rendered by lower courts in the relevant state, *Progressive Cas. Ins. Co. v. Engemann*, 268 F.3d 985, 988 (10th Cir. 2001), appellate decisions in other states with similar legal principles, *United States v. DeGasso*, 369 F.3d 1139, 1148 (10th Cir. 2004), federal district court decisions interpreting the law of the state in question, *Sapone v. Grand Targhee, Inc.*, 308 F.3d 1096, 1100, 1104-05 (10th Cir. 2002), and "the general weight and trend of authority" in the relevant area of law, *MidAmerica Constr. Mgmt., Inc. v. Mastec N. Am., Inc.*, 436 F.3d 1257, 1262 (10th Cir. 2006) (internal quotation marks omitted). In evaluating these various sources, the court must keep in mind the ultimate goal: predicting what the state supreme court would say on the issue in question.

Under New Mexico law, to remedy a breach of trust by a trustee, a court may "compel the trustee to redress a breach of trust by paying money, restoring property or other means." N.M.S.A. 1978, § 46A-10-1001. A trustee who commits a breach of trust is liable to the beneficiaries for the amount required to restore the value of the trust property and trust distributions to what they would have been had the breach not occurred, or the profit the trustee made by reason of the breach, whichever is greater. N.M.S.A. 1978, § 46A-10-1002.[2] The New Mexico courts have not yet interpreted this statute and thus have not yet specifically addressed

---

[2]New Mexico has adopted its provisions regarding remedies and damages for breach of trust from the Uniform Trust Code. While July 1, 2007 is the effective date of the provisions regarding damages for breach, the New Mexico legislature has specified that "the provisions of this 2007 act apply to judicial proceedings concerning trusts commenced before July 1, 2007 unless the court finds that application of a particular provision of this 2007 act would substantially interfere with the effective conduct of the judicial proceedings or prejudice the rights of the parties, in which case the particular provision of this 2007 act does not apply and the superseded law applies." N. M. S. A. 1978 § 46A-11-1105. The preceding version of the Uniform Trust Code adopted by the New Mexico legislature in 2003 did not contain provisions regarding damages for breach, and N.M.S.A § 46-2-17 (repealed 2003), which governed liability for breach of trust prior to New Mexico's adoption of the Uniform Trust Code, similarly contained no specific provisions regarding the measurement of damages.

the proper measurement of damages where there has been a breach of trust by a trustee. However, the New Mexico statute is based on the Uniform Trust Code, which in turn is based on the Restatement (Third) of Trusts. Unif. Trust Code § 1002 (2000). The Restatement thus provides useful guidance as to the damages likely available for breach of trust under New Mexico law. The Restatement notes that "[i]f the breach of trust causes a loss, including any failure to realize income, capital gain, or appreciation that would have resulted from proper administration, the beneficiaries may surcharge the trustee for the amount necessary to compensate fully for the consequences of the breach." Restatement (Third) of Trusts §205 (1992).

Defendant argues that Plaintiffs cannot obtain appreciation damages, and therefore concludes that there is no genuine issue of material fact regarding Plaintiffs' damages. Defendant correctly notes that notwithstanding the language of the Restatement, courts have not universally adopted appreciation damages.  *See, e.g.,* W. W. Allen, Annotation,  *Measure of trustee's liability for breach of trust in selling investment property, or changing investments, in good faith,* 58 A.L.R.2d 674 (1958) (finding that imposing appreciation damages on a trustee who in good faith improperly changed the nature of assets may in some cases lead to surprisingly harsh, even unjust and speculative, results); *In Re Talbot's Estate*, 296 P.2d 848 (Cal. App. 1956) (where trustee sold trust stock in good faith but in breach of trust agreement, court awarded plaintiff taxes and expenses plus interest but did not award plaintiff damages for loss of income as a result of the asset change); *but see,* Joseph Kartiganer, Raymond H. Young, *The UTC: Help for Beneficiaries and Their Attorneys,* 17 Prob. & Prob. 18, 21 (2003) ("[t]his measure includes not only recovery of lost income or principal but also capital gain or appreciation that would have resulted from proper administration");  Restatement (Third) Trusts §208 (where trustee sells property that the trustee has a duty to retain in the trust, beneficiaries may charge the trustee with the value of the property at the time of the decree, plus the value of the income that would have accrued to the trust if the property had been retained); *Matter of Estate of Janes*, 630 N.Y.S.2d 472, 480-81 (N.Y.Sur. 1995) (awarding appreciation damages based on market performance where trustee breached duty of prudent investment by concentrating trust assets in a single stock).  The Court notes, however, that it does not have to determine at this time whether appreciation damages are appropriate.  Rather the Court must decide whether, construing the evidence in the

light most favorable to the Plaintiffs, there is a genuine issue of material fact as to whether the Plaintiffs suffered *any* recoverable damages.

Plaintiffs, in their original complaint, do not solely seek recompense for the appreciation in value of the shares of stock and mutual fund sold by Defendant. Plaintiffs additionally seek to recover for the capital gains tax incurred as a result of Defendant's distribution of cash rather than stock, as well as any interest or dividends that accrued since the date of sale.  [Plaintiffs' Complaint, 4].  The record before the Court includes a letter from Defendant to Plaintiffs indicating that as a result of the conversion of the assets in the trust to cash, Plaintiffs owed long term capital gains taxes at the rate of 20%.[3]  [Plaintiffs' Response, Ex. E]. While this loss was incurred by the Defendant prior to the termination of the trust, Plaintiffs were not made aware of the tax liability until October 2002, almost a month after the winding up period had ended. [Plaintiffs' Response, Ex. E].  Had Defendant distributed the shares in kind, the beneficiaries would not have incurred any capital gains tax at that time. Stuart Lazar, 4 *Mertens Law of Fed. Income Tax'n* § 22:38 (2007) (the capital gain and loss provisions of the Tax Code only apply in situations where there has been a "sale or exchange" for tax purposes).

In addition to the capital gains liability incurred by Defendant's sale, the sale also appears to have deprived Plaintiffs of at least three dividends. [*See* Defendant's Motion, Ex. I].  The trustee's duties, including its fiduciary duties, do not end at the date of termination of the trust, but rather continue until the trust is finally wound up by complete distribution of the trust estate. Restatement (Third) of Trusts § 89 (2007). Defendant's allegedly improper sale of the shares of stock took place on March 8, 2002 [Defendant's Motion, Ex. D].  The winding up of the trust ended on August 15, 2002, the date of the final distribution of the trust. [Defendant's motion, Ex. H];  Restatement (Third) of Trusts § 89 (2007). During the period after the sale of the stock but prior to the final termination of Defendant's duties as trustee, Bank of America declared a dividend on March 22, 2002 for $0.60 and on June 28, 2002 for $0.60, and PNM declared a dividend on May 17, 2002 for $0.22. [Defendant's Motion, Ex. I].  Had Defendant not liquidated

---

[3]Defendant notes that Plaintiff Cutaia has not yet paid the capital gains taxes due to the IRS. It seems clear from the record that Plaintiff Cutaia owes these taxes, thus the fact that she has not yet paid is irrelevant for present purposes.

the trust assets, it appears that these dividends would have accrued to the trust corpus prior to final distribution.

The capital gains liability incurred by the beneficiaries as a result of Defendant's sale of the trust stock and the dividends that did not accrue to the trust corpus as a result of the sale are sufficient to establish a genuine issue of material fact as to Plaintiffs' damages such that summary judgment is inappropriate at this time.

## **O R D E R**

For the above-stated reasons, Defendant's Motion for Summary Judgment Based on the Absence of Damages to Plaintiffs is DENIED.

DATED this 19th day of October, 2007.

BRUCE D. BLACK
United States District Judge