IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| DIANE CUTAIA, MARK SNYDER<br>and LINDA SNYDER McFALL,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK NEW MEXICO,<br><br>Defendant. | <br><br><br><br><br><br>No. CIV-06-326 BB/WPL |

## MEMORANDUM OF DECISION

In this action, plaintiffs Diane Cutaia, Mark Snyder and Linda Snyder McFall assert that Wells Fargo Bank New Mexico breached trust terms when, in March 2002, it sold publicly traded securities, which represented the assets of the Leonard A.B. and Catherine M. Parker Trust B ("Trust"), without the prior written consent of Jerry Lewallen.

This case was tried to the Court on November 28 and 29, 2007, and is now fully briefed. The Court makes the following findings of fact and conclusions of law.

### Findings of Fact

Leonard and Catherine Parker established the Leonard A.B. Parker and Catherine M. Parker Revocable Trust on August 28, 1981. Upon the death of Catherine Parker in 1986, the trust estate was divided into Trust A and Trust B. This case concerns only Trust B.

Until his death in 2001, Leonard Parker was the trustee for Trust B. After Mr. Parker's death, Wells Fargo became the Trustee of Trust B.

In accordance with section 6.2 of Trust Article VI, the Trustee of Trust B was charged with the duty to make several specific bequests and to distribute the residuary

estate among four charitable organizations (30% of the residuary estate), Cutaia (35% of the residuary estate), Snyder (17.5% of the residuary estate) and Snyder McFall (17.5% of the residuary estate).

Article IX of the Trust provided that after the death or disability of both grantors, " the Trustee is to obtain the written consent of Jerry L. Lewallen prior to changing the nature of the trust assets ...." Section 9.1 of that Article also provided that the Trustee could "divide and distribute the trust estate according to such method or procedure as the Trustee may elect ... and, except as may otherwise be provided herein, to do so in cash or in kind or partly in kind and partly in cash, at its discretion ...."

At the time that Wells Fargo became the Trustee, Michael D. DeVenzeio, defendant's Vice President and Trust Officer, reviewed the Trust instrument and inquired into whether or not Lewallen was alive. His inquiry included a search of the white pages and yellow pages of Albuquerque, New Mexico, telephone directories, and a name search on Yahoo. He also received information from the local Society of Certified Public Accountants that Mr. Lewallen had withdrawn his membership due to health reasons, and from defendant's counsel and other individuals at Wells Fargo and within the Certified Public Accountant community that Lewallen had suffered from a brain tumor and was deceased. Lewallen was, however, actually alive at the time.

In November of 2001, defendant provided each of the Trust beneficiaries with a copy of the Trust document.

Between December 2001 and March 2002, the Trustee received the assets of the Trust, which consisted of 8,090 shares of Bank of America stock, 2,098 shares of PNM Resources stock, 8,842.079 shares of American Expression New Dimensions Fund, and 2,497.326 shares of American Express Stock Fund Class.

On January 16, 2002, the Trust sold 125 shares of Bank of America stock to cover administration expenses. On March 8 and 11, 2002, Wells Fargo liquidated all securities it held as Trustee.

In a letter dated April 23, 2002, the beneficiaries were informed that a Petition for Order of Complete Settlement of Trust was to be filed with the Bernalillo County District Court. On May 13, 2002, an Order Approving Complete Settlement of Trust was entered, providing that the "Trustee is discharged from further claims or demands of any beneficiary or entity listed in the Petition." A copy of this order was sent to plaintiffs on May 13, 2002.

On May 23, 2002, DeVenzeio sent a letter to plaintiffs explaining that they would receive their distributions within the next three months and that they could contact him with any questions. He enclosed a copy of the Order Approving Complete Settlement of Trust.

In July 2002, DeVenzeio contacted the plaintiffs by telephone to discuss distribution of the Trust assets. On July 12, 2002, DeVenzeio sent plaintiffs distribution checks. In August 2002, plaintiffs received an additional final distribution check after the Trust had received an income tax refund and additional interest.

On October 4, 2002, DeVenzeio sent letters to plaintiffs advising them of the long-term capital gains associated with their Trust distributions.

Plaintiffs now assert a claim against defendant relevant to the capital gains tax resulting from the March 2002 sales. Cutaia has not yet paid her capital gains tax and

seeks $28,623 to cover her liability. Snyder and Snyder McFall have paid their capital gains taxes and claim, respectively, $14,569 and $12,942.

## CONCLUSIONS OF LAW

At the conclusion of evidence, the Court stated on the record that it found that plaintiffs had made a prima facie case that defendant had an obligation pursuant to Article IX of the Trust to obtain the written consent of Lewallen prior to changing the nature of the trust assets, and that defendant had breached this obligation. Accordingly, the Court indicated that it would award plaintiffs the amounts requested on their claims for capital gains taxes unless defendants could demonstrate that such an award was not warranted.

Defendants now argue that plaintiffs are not entitled to such an award because (1) the March 2002 sale did not change the nature of the Trust assets; (2) defendant reasonably believed that it was impossible to consult with Lewallen; (3) the March 2002 sale was prudent; (4) the securities would have been liquidated at a later date, thereby incurring capital gains taxes in any event; (5) plaintiffs have invested and profited from the proceeds from the sale; and (6) plaintiffs' benefit from the liquidation offsets the capital gains taxes.

### Change to the Nature of Assets

Defendant argues that the nature of the Trust assets did not change because it invested the proceeds of the liquidated assets in another security, the Wells Fargo Stable Income Fund, a bond fund. Defendant maintains that it had no duty to consult with Lewallen for purposes of exchanging one security for another. However, the Court rejects this argument because the assets were converted to cash prior to investment in the Wells Fargo Stable Income Fund; the testimony at trial demonstrated that this

investment was intended to be for short duration prior to converting the asset back to cash. The evidence concerning DeVenzeio's efforts to locate Lewallen and then to obtain court approval indicates that defendant also considered the liquidation of the assets to cash to be a change to the nature of the assets.

Impossibility

Defendant relies upon the Restatement (Second and Third) of Trusts in advancing its argument that it was not bound to comply with Article IX since compliance appeared reasonably impossible.

Comment (d) to section 165(1) of the Restatement (Second) provides that a trustee is not under a duty to comply if he makes "such an investigation as is reasonable under the circumstances and it reasonably appears that the performance is impossible." See also Restatement (Third) of Trusts § 73 (2007) (same). According to section 75(g) of the Restatement (Third), the "death of the holder of power to direct or prevent certain actions by the trustee" terminates that veto power over the trustee, and the trustee is thereafter to proceed "as if the provision had not been included in the terms of the trust."

Defendant's investigation was focused largely upon Lewallen's professional associations, although DeVenzeio did consult telephone listings and conducted some internet searches. However, the Court finds that the scope of this investigation was not "reasonable under the circumstances" prior to concluding that performance was impossible. DeVenzeio's testimony reflects that he accepted the verbal information received from colleagues without obtaining conclusive evidence of Lewallen's death. Defendant made no attempt to secure a death certificate or to review probate records. Further, it does not appear that defendant sought the help of plaintiffs to locate

Lewallen. These steps represent reasonable avenues of inquiry that should have been considered prior to concluding that performance was impossible. In light of the fact that the Trust document placed significant importance upon the provision that the Trustee obtain Lewallen's approval, defendant unreasonably neglected to expand its investigation to obtain official documentation of Lewallen's death or to exhaust its inquiry of individuals associated with the Trust who may have retained some personal knowledge of how to contact Lewallen.

Prudence of the Sale

Defendant contests plaintiff's assertion that the sale violated the Prudent Investor Rule. Defendant argues that no evidence demonstrates the imprudence of the sale as part of winding down the Trust assets.

Section 45-7-603 of the New Mexico Statutes sets forth the standard for the trustee as a prudent investor. It provides that a "trustee's investment and management decisions respecting individual assets must be evaluated not in isolation but in the context of the trust portfolio as a whole and as part of an overall investment strategy having risk and return objectives reasonably suited to the trust." According to the statute, the trustee "shall make a reasonable effort to verify facts relevant to the investment and management of trust assets," and "shall consider" the following circumstances:

(1) general economic conditions;
(2) the possible effect of inflation or deflation;
(3) the expected tax consequences of investment decisions or strategies;
(4) the role that each investment or course of action plays within the overall trust portfolio, which may include financial assets, interest in closely held enterprises, tangible and intangible personal property and real property;
(5) the expected total return from income and the appreciation of capital;
(6) other resources of the beneficiaries;
(7) needs for liquidity, regularity of income and preservation or appreciation of capital; and

(8) an asset's special relationship or special value, if any, to the purposes of the trust or to one or more of the beneficiaries.

In this instance, DeVenzeio's testimony reflects that defendant considered the general economic condition of a volatile stock market. However, as observed by this Court during the trial, defendant had no information about the tax basis of the assets involved and therefore could not determine the capital gains tax liability involved. No evidence demonstrates that defendant was aware of the resources of the beneficiaries. Additionally, defendant had no knowledge concerning whether the assets had a special value to the purposes of the Trust or to the beneficiaries. In light of defendant's failure to consider such factors, the Court cannot find that defendant's conduct satisfied the prudent investor standard pursuant to section 45-7-609.

Entitlement to Amount Requested

Defendant's remaining arguments attack the amount requested in capital gains.

An award of damages in a bench trial must be supported by substantial evidence. Yates Petroleum Corp. v. Kennedy, 108 N.M. 564, 565, 775 P.2d 1281, 1282 (1989). Generally, damages must be proven with reasonable certainty, and surmise, conjecture, or speculation will not support an award. Gulf Ref. Co. v. Etcheverry, 85 N.M. 266, 267, 511 P.2d 752, 753 (Ct. App.1973).

Defendant first urges the Court to consider when plaintiffs would have liquidated the assets had they received an in-kind distribution. Defendant maintains that Snyder McFall and Cutaia would have liquidated their assets at a time in which they would have incurred the same capital gains tax liability. This argument hinges upon undue speculation and must be rejected.

Defendant argues next that an award of the capital gains tax would provide a windfall because plaintiffs Cutaia and Snyder McFall have made real estate investments

with the proceeds of the sale that have increased in value beyond the amount of the capital gains tax. Defendant posits that had the plaintiffs received the original securities in kind, "they would either have merely postponed payment of capital gains, or lost those gains, depending on the price of the securities when ultimately sold." In this instance, plaintiff's investment of the proceeds is irrelevant to the amount of damages to be awarded because the Court cannot speculate about what the plaintiffs might have done had no breach occurred. It is even unclear whether plaintiffs would have received an in-kind distribution or whether Lewallen would have approved the decisions made by defendant.

Finally, defendant asserts that plaintiffs' tax liability was offset by gains made by defendant's investment decisions and the amount that they saved by not having to incur brokerage fees for one-time transactions. Again, this argument requires the Court to surmise about what decisions would have been made had no breach occurred.

The Court finds that the evidence establishes that a breach occurred giving rise to a fixed amount of damages based on the capital gains taxes incurred. Although plaintiff Snyder did not appear at trial, the evidence submitted supports his claim for damages.

## CONCLUSION

Based on the foregoing, the Court enters judgment in favor of the plaintiffs in the amount of $56,134, with plaintiff Cutaia to receive $28,623; plaintiff Snyder to receive $14,569; and plaintiff Snyder McFall to receive $12,942.

The clerk is instructed to close this case.

Dated this _4th__ th day of June, 2008.

                                        /s/
                                WARREN W. EGINTON
                                SENIOR UNITED STATES DISTRICT JUDGE
                                SITTING BY DESIGNATION